### Phares Uhrich et al. v. G. W. Livergood et al.

1. Construction of Contracts—*Matters Not Contemplated by the Contracting Parties.*—Courts are powerless to interpolate into written agreements, conditions to which the minds of the contracting parties have not assented.

2. Interest—*What is Not an Unreasonable and Vexatious Delay in the Payment of Money.*—Where the condition of a contract as to the performance of a certain act by one of the parties is an open question, the non-performance of such act alone will not justify the court in saying that there was an unreasonable and vexatious delay in the payment in money to become due by the terms of the contract.

3. Solicitor's Fees—*Allowance of an Amount in Excess of that Claimed in the Pleadings.*—In foreclosure proceedings it is error to allow a solicitor's fee in excess of the amount claimed as such in the pleadings.

Mortgage Foreclosure.—Appeal from the Circuit Court of Shelby County; the Hon. Truman E. Ames, Judge, presiding. Heard in this court at the November term, 1900. Reversed and remanded. Opinion filed June 10, 1901.

Hamlin & Kelley, attorneys for appellants.

Chafee & Chew, attorneys for appellees.

Mr. Presiding Justice Harker delivered the opinion of the court.

G. W. Livergood filed a bill to foreclose a mortgage given by appellants to secure a note of $600, payable to Lee Schrantz and assigned by Schrantz to Livergood before maturity. Schrantz was made defendant with appellants

and, after answering Livergood's bill, filed a cross-bill praying for an account of the amount claimed to be due him from appellants by virtue of a written contract also secured by mortgage. Phares Uhrich also filed a cross-bill in which he claimed damages by reason of the alleged failure of Schrantz to comply with the terms of the said written contract.

The case was tried upon the pleadings and evidence heard in open court and a decree rendered granting the relief prayed for in the bill of Livergood and the cross-bill of Schrantz. The court found the amount due Livergood to be $621.58; the amount due Schrantz to be $5,609.25 principal and $210.33 interest: assessed complainant's solicitor's fee for $500 and ordered sale of the mortgaged premises in event of default of payment.

From the evidence preserved in the record it appears that on the 17th of March, 1894, Uhrich and Schrantz entered into the following agreement:

"Memorandum of agreement made and entered into this 17th day of March, A. D. 1894, between Phares Uhrich of Blue Mound, Illinois, and Lee Schrantz of Christian county, Illinois, witnesseth: That said Uhrich owns four hundred and fifteen and one-half (415½) acres of land in Cold Spring township, Shelby county, Illinois, in sections seven and eighteen (7 and 18) upon which there is a mortgage made by J. R. Edmonds, of $3,500, and which land said Uhrich purchased of said Edmonds, subject to said mortgage. Now it is agreed between said parties that said Schrantz is to go upon said lands, take charge of the same and clean the same up, and have the use of the same for five years, and all timber upon the farm. He is to pay off said mortgage by the end of said five years and all interest accruing thereon after June, 1894, and is to have a deed for the undivided one-half of said lands. The said deed to be executed at once. He also is to advance the money to pay the interest due in June, 1893, and June, 1894, and also the taxes now due on said lands. And the said Uhrich is to execute a note to said Schrantz for whatever amount of money he is obliged to advance at this time to pay said interest and taxes. Said note to be due five years from the date thereof.

He also guarantees that the said farm shall be worth twenty-seven dollars per acre at the end of the five years,

and if the same is not worth that price he guarantees hereby to make the same worth that price so that Mr. Schrantz's undivided half of the farm shall be worth to him the sum of twenty-seven dollars per acre, which said contract and guarantee is to be secured by mortgage as well as the note. Said Schrantz to pay all taxes during said time, and at the end of the five years said land is to be sold at public auction to the highest and best bidder, and whatever the farm lacks in bringing twenty-seven dollars an acre said Uhrich is to make up to said Schrantz out of the proceeds of the sale so that Mr. Schrantz's half of the land shall bring him twenty-seven dollars per acre.

In witness whereof the parties hereto have hereunto set their hands, the day and year first above written.

PHARES UHRICH.<br>LEE SCHRANTZ."

On the same day Uhrich and his wife conveyed the undivided one-half of the 415½ acres of land mentioned in the contract to Schrantz and executed the note and mortgage set out in the original bill, the mortgage being on the undivided one-half interest in the land retained by Uhrich. The land was, at the time, grown up in sprouts, covered with logs and trees and in an unfit condition for farming and grazing purposes. Schrantz moved upon it, expended about three thousand dollars in improvements and taxes and paid off the Edmonds debt and mortgage. The evidence further shows that he cleared up the entire body of land once, and that portions of the land he cleared up each year, but that a large part of it, at the expiration of the five years, had so grown up in sprouts and underbrush as to be in no better condition than when he moved upon it.

At the termination of the five years, Schrantz called upon Uhrich to join him in making a sale of the land under the provisions of the contracts, but Uhrich refused, upon the ground that Schrantz had not cleaned up the ground and kept it clean within the meaning of the contract.

The leading frictional question in the case grows out of the meaning of the following language contained in the agreement:

"Now it is agreed between said parties that said

Schrantz is to go upon said land and take charge of the same and clean the same up."

The contention of appellants is that the language employed required Schrantz not only to clean up the entire 415½ acres of land but also to have it cleaned up at the expiration of the five years mentioned, before he would be in a position to compel Uhrich to make good his undertaking to Schrantz, to have Schrantz's part bring twenty-seven dollars per acre. To so hold would be to read into the contract a condition that does not appear here. Nor can we say by placing a reasonable construction upon the other provisions of the contract, that the contracting parties assented to or contemplated such a thing. That courts are powerless to interpolate into written agreements conditions to which the minds of the parties have not assented, is elementary. We therefore hold with the Circuit Court in construing the above quoted clause in the contract and think Schrantz has substantially performed the undertaking on his part. We think, however, that the court erred in charging Uhrich with the interest on the $5,609.25. The construction of the contract was an open question and the attitude of Uhrich in contending that the contract required Schrantz to have the land cleaned and in good condition for sale at the end of the five years was not such as to justify the court in saying that there was unreasonable and vexatious delay in the payment of money due.

The court erred in allowing $500 solicitor's fee against appellants. Only $100 was claimed as a fee in the pleadings. All the evidence heard was preserved by a certificate of the evidence signed by the judge, and nowhere does it appear in the certificate that any testimony was heard as to what would be a reasonable solicitor's fee. The $621.58 allowed Livergood was too large by $18.72.

The decree of the Circuit Court will be reversed and the cause remanded for further proceedings in that court consistent with the views above expressed. Reversed and remanded.